IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC JELLS,  :  | |
|     Petitioner  : | No. 1:25-cv-02260 |
|     : | |
|     v.  : | (Judge Kane) |
|     : | |
| WARDEN OF FPC SCHUYLKILL,  : | |
|     Respondent  : | |

**MEMORANDUM**

Currently before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2241 and a motion to stay filed by pro se Petitioner Eric Jells ("Jells"), a convicted and sentenced federal inmate. For the reasons stated below, the Court will deny the motion to stay and dismiss the Section 2241 petition.

I.    BACKGROUND

On September 13, 2024, Jells was sentenced to an aggregate period of sixty months' incarceration to be followed by three years of supervised release after pleading guilty to conspiracy to conduct and participate in the affairs of an enterprise through racketeering activity (18 U.S.C. § 1962(d)) and conspiracy to distribute and possess with intent to distribute forty grams or more of a mixture and substance containing a detective amount of fentanyl and a quantity of a mixture and substance containing a detectable amount of methamphetamine (21 U.S.C. § 846) in the United States District Court for the Western District of Pennsylvania. See United States v. Jells, No. 23-cr-00012 (W.D. Pa. filed May 30, 2023), ECF No. 2424.[1] He is currently incarcerated at Federal Correctional Institution Schuylkill and has, according to the

---

[1] The Court takes judicial notice of the docket in Jells's underlying criminal case. See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket).

Federal Bureau of Prisons ("BOP") inmate locator (https://www.bop.gov/inmateloc/), an anticipated release date of September 10, 2026.

Jells commenced the instant action by filing his Section 2241 habeas petition, which the Clerk of Court docketed on November 25, 2025. (Doc. No. 1.) Jells neither remitted the filing fee nor sought leave to proceed in forma pauperis when he filed his petition; as such, an Administrative Order issued providing him with a period of thirty days to pay the filing fee or apply for leave to proceed in forma pauperis. (Doc. No. 3.) In response, Jells timely paid the fee. See (Unnumbered Docket Entry Between Doc. Nos. 3 and 4).

On December 16, 2025, the Court issued an order which, inter alia, directed Respondent to file a response to Jells's Section 2241 petition. (Doc. No. 5.) Respondent timely filed a response in opposition to the petition on December 31, 2025. (Doc. No. 6.) Jells did not file a reply brief in further support of his petition, and the time for him to do so has passed. As such, Jells's petition is ripe for disposition.

## II.  LEGAL STANDARDS

### A.  Section 2241 Habeas Petitions

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence." See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas"). While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out." See Woodall, 432 F.3d at 242, 243 (citation omitted). As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody.

See, e.g., Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990) (finding that a federal inmate's Section 2241 petition is actionable where the inmate attacks the term of their custody by challenging the way the BOP is computing their federal sentence).

      **B.**      **Exhaustion of Administrative Remedies Under Section 2241**

Although Section 2241 does not contain an explicit statutory exhaustion requirement, the Third Circuit Court of Appeals has consistently required a federal inmate to exhaust their administrative remedies before filing a Section 2241 petition. See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) ("Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." (citations omitted)). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." See id. at 761–62 (citations omitted)). Exhaustion is not required when it would not promote these goals. See Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) ("The exhaustion doctrine will not be applied . . . when none of the basic goals (of the doctrine) would be served." (citation and internal quotation marks omitted)). "For example, exhaustion may be excused where it 'would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm.'" Brown v. Warden Canaan USP, 763 F. App'x 296, 297 (3d Cir. 2019) (unpublished) (quoting Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)). Exhaustion is also unnecessary if the issue presented is one that consists purely of statutory construction. See

Vasquez v. Strada, 684 F.3d 431, 433–34 (3d Cir. 2012) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981).

### C. The Federal Bureau of Prisons' Administrative Remedy Program[2]

The Federal Bureau of Prisons ("BOP") has a multi-step administrative remedy program allowing an inmate "to seek formal review of an issue relating to any aspect of [their] confinement." See 28 C.F.R. § 542.10(a). First, an inmate should attempt informal resolution of the issue with the appropriate staff member. See id. § 542.13(b). If informal resolution is unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the warden within twenty calendar days "following the date on which the basis for the Request occurred." See id. § 542.14(a). The warden is to respond to the request within twenty calendar days. See id. § 542.18. An inmate dissatisfied with the warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the warden signed the response." See id. § 542.15(a). Finally, an inmate may appeal from the Regional Director's response, using the BP-11 form, to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response." See id. The General Counsel's response to this appeal is due within twenty calendar days; however, the time for a response may be extended by twenty days. See id. § 542.18.

---

[2] The Court takes judicial notice of the BOP's Administrative Remedy Program, which is available on the BOP's website at https://www.bop.gov/policy/progstat/1330_018.pdf. See, e.g., Baptiste v. Morris, No. 18-cv-01484, 2020 WL 2745739, at *2 n.5 (M.D. Pa. May 27, 2020) (taking judicial notice of BOP's Administrative Remedy Program).

### III. DISCUSSION

#### A. The Parties' Arguments

Jells asserts that he has earned one hundred and twenty First Step Act of 2018 ("FSA") time credits ("FTCs"), which the BOP has failed to apply to his supervised release. (Doc. No. 1 at 1–2.) Jells acknowledges that he has not exhausted his administrative remedies with the BOP as to this claim, but he argues that he did not have to exhaust the claim because he is raising an issue of statutory construction or, alternatively, exhaustion would be futile because he will be released to a halfway house as soon as March 4, 2026. (Id. at 2–4.)

In response, Respondent requests that the Court dismiss Jells's petition for his failure to exhaust his administrative remedies. (Doc. No. 6 at 5–11.) Respondent also argues that even if the Court considers the merits of Jells's petition, the Court should deny it because he cannot have FTCs applied to his sentence because he is classified at a medium recidivism risk score. (Id. at 11–14.)

#### B. The FSA

In 2018, Congress passed the FSA to expand federal prisoners' access to noncustodial placements. See Pub. L. No. 115-391, 132 Stat. 5194 (2018) (codified at 18 U.S.C. §§ 3621, 3624, 3631–35). The FSA's provisions work together to motivate inmates to participate in specific programs and activities by allowing them to receive "earned time credits" for participating in "recidivism reduction programs." See 18 U.S.C. §§ 3621(h), 3624(g), 3632. It also requires the BOP to conduct initial assessments for all inmates, assign them to appropriate evidence-based recidivism reduction (EBRR) programs or productive activities (PAs), and expand the availability of such programs.

Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System (the "System") within two-hundred-and-ten (210) days of December 21, 2018, the date on which the FSA was enacted. See 18 U.S.C. § 3632(a). The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release. See (id.). Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs." See Kurti v. White, No. 19-cv-02109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)). In response to this directive, the BOP developed the "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN") system. See Brennerman v. Warden, FCI-Allenwood Low, No. 24-cv-02029, 2025 WL 52469, at *1 (M.D. Pa. Jan. 8, 2025) (citing DeFoggi v. United States, No. 20-cv-03889, 2020 WL 2899495, at *2 n.1 (D.N.J. June 3, 2020)). The PATTERN system "determines the recidivism risk of each prisoner . . . and classif[ies] each prisoner as having minimum, low, medium, or high risk for recidivism." See 18 U.S.C. § 3621(a)(1).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive FSA time credits to be applied toward time in pre-release custody or supervised release. See id. § 3632(d)(4)(A). An inmate may initially earn ten days of credit for every thirty days of successful participation. See id. Moreover, eligible inmates assessed at a minimum or low risk

6

of recidivism who do not increase their risk of recidivism over two consecutive assessments may earn an additional five days of credit for every thirty days of successful participation. See id.

The BOP applies earned time credits to expedite an inmate's transfer either to prerelease custody, which includes residential reentry centers (RRCs) and home confinement, or to supervised release if such a term has been imposed as part of the inmate's sentence:

> If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

See id. § 3624(g)(3).

To be eligible for early placement, the prisoner must satisfy the following eligibility criteria. First, the prisoner must have earned time credits equal to the remainder of their imposed term of imprisonment. See id. § 3624(g)(1)(A). Second, the prisoner must have demonstrated a reduced recidivism risk or maintained a low risk during imprisonment. See id. § 3624(g)(1)(B). Third, the prisoner's remaining sentence must have been computed "under applicable law." See id. § 3624(g)(1)(C). Fourth, for placement in prerelease custody or early placement in supervised release, the prisoner must have a minimum or low recidivism risk score in the last two (2) reassessments. See id. § 3624(g)(1)(D)(i)–(ii).

If an inmate cannot meet this recidivism-risk requirement, they can alternatively petition the Warden to be considered on an individualized basis for placement in prerelease custody or supervised release. See id. § 3624(g)(1)(D)(i)(II); Delgado v. Barraza, No. 23-cv-00881, 2023 WL 4553380, at *1 (M.D. Pa., July 14, 2023) ("Inmates with a high or medium PATTERN score can petition the warden to be considered on an individual basis for placement in prerelease custody or supervised release." (citations omitted)). The Warden can approve that petition upon

determining that the prisoner (1) "would not be a danger to society if transferred to prerelease custody or supervised release," (2) "has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities," and (3) "is unlikely to recidivate." See id. § 3624(g)(1)(D)(i)(II)(aa)–(cc); 28 C.F.R. § 523.44(c)(2). "This exception to the minimum- or low-recidivism-risk precondition requires an inmate to directly petition the [w]arden, and therefore by statute (and regulation) demands administrative exhaustion." Fowler v. Wertzman, No. 23-cv-00290, 2023 WL 4853720, at *2 (M.D. Pa. July 28, 2023).

Although this exception requires exhaustion, the precise parameters of the actions needed to fully exhaust are unclear. The statute requires only that an otherwise ineligible prisoner petition and obtain approval from the warden to be placed in prerelease custody or early supervised release. See 18 U.S.C. § 3624(g)(1)(D)(i) (allowing for placement in prerelease custody if the prisoner "has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison . . . ."). It does not, inter alia, (1) establish a procedure for a prisoner to submit the petition, i.e., through an Inmate Request to Staff form (Form BP-S148.055 or BP-A0148), a formal Administrative Remedy (Form BP-9), or a handwritten piece of paper; (2) designate a time period within which the warden must decide the petition; or (3) set forth any procedures for a prisoner to follow if the warden denies the petition. See id.; see also Jones v. LeMaster, No. 23-cv-00083, 2023 WL 6926201, at *2 (E.D. Ky. Oct. 19, 2023) (explaining that "§ 3624(g)(1)(D)(i)(II) grants the warden the authority to approve a prisoner's petition for an exception, and further establishes substantive criteria for evaluating it, but conspicuously does not establish any particular procedure to follow in doing so").

### C. Analysis

The Court will dismiss Jells's Section 2241 petition for his failure to exhaust his administrative remedies. Jells concedes that he failed to exhaust his administrative remedies and requests that he be excused from doing so because he is raising an issue of statutory construction and exhaustion would be futile. As for his first argument, Jells's petition does not present a matter purely of statutory construction requiring this Court to determine the precise meaning of a provision of the FSA; instead, he seeks an order directing the BOP to apply 120 FTCs towards his supervised release. Because this claim does not present a claim of statutory construction, he was required to exhaust this claim with the BOP before filing his petition unless he can show that exhaustion would be futile. See, e.g., Malley v. Spaulding, No. 22-cv-01673, 2023 WL 3480887, at *2 (M.D. Pa. May 16, 2023) ("Because his petition does not present a matter purely of statutory construction; rather [sic] he is seeking to have a specific number of FSA time credits applied towards his sentence, exhaustion is not excused in that situation." (citations omitted)).

Regarding futility, Jells does not argue that the BOP cannot grant him the relief he seeks in this case; instead, he asserts that exhaustion would be futile because he is supposed to be released to a halfway house on March 4, 2026. This type of argument—that exhaustion should be excused because of an impending release date—has been consistently rejected by district courts in the Third Circuit. See Meadows v. Warden, FCI-Allenwood Low, No. 24-cv-00952, 2024 WL 3871810, at *2 (M.D. Pa. Aug. 19, 2024) (explaining that "[t]he Court is unaware of any decision from the Third Circuit Court of Appeals holding that a federal prisoner may be excused from the exhaustion requirement" on the ground that they have an impending release date, and pointing out that "district courts within the Third Circuit have repeatedly rejected the argument that an inmate can be excused from the exhaustion requirement simply because [their]

projected release date is approaching, and [they] may not complete [their] administrative appeal before the release date." (citations omitted)).  This Court agrees with the reasoning of these cases and will reject Jells's contention that he should be excused from exhaustion on the ground of futility.

In conclusion, Jells fails to show that he should be excused from exhausting his FSA claim in this case and, as such, the Court will dismiss his Section 2241 petition for his failure to exhaust.  The Court also notes that even if exhaustion was excused in this case, Jells's petition would be denied because, as Respondent points out, he is ineligible for the application of any earned FTCs towards prerelease custody because he has a medium recidivism risk level.  See (Doc. Nos. 6-1 ¶ 10 and Attachment C, Jells's Recidivism Risk Assessment); see also 18 U.S.C. § 3624(g)(1)(D)(i)–(ii) (stating that to be placed in prerelease custody or for early placement in supervised release, the prisoner must have a minimum or low recidivism risk score in the last two (2) reassessments); id. § 3624(g)(1)(B) (providing that FTCs cannot be applied until the prisoner has "shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during [their] term of imprisonment").  Jells also concedes that he will not have "a minimum or low recidivism [risk level] until April 2026."  See (Doc. No. 7 at 1).[3]

### D.     Jells's Motion to Stay

Jells requests that this Court stay his petition due to his inability to be assessed at a minimum or low recidivism risk until April 2026.  See (id.).  He points out that he will be in a

---

[3] To the extent that Jells would seek application of his FTCs despite his medium recidivism risk score, he could petition the warden for relief.  See 18 U.S.C. § 3624(g)(1)(D)(i)(II); Delgado, 2023 WL 4553380, at *1 ("Inmates with a high or medium PATTERN score can petition the warden to be considered on an individual basis for placement in prerelease custody or supervised release." (citations omitted)).  Jells does not state that he chose this avenue for possible relief.

halfway house and must still serve his period of supervised release, to which his FTCs may be applied.  See (id.).  The Court will deny Jells's motion to stay because, despite his representation to the contrary, the BOP has yet to designate him at a minimum or low recidivism risk level or fail to apply his FTCs to his term of supervised release after he achieved this level.  Granting his motion would require the Court to speculate that these events will occur.  Accordingly, the Court will deny the motion to stay.  Jells may file another Section 2241 petition if he believes that he is eligible for the application of his FTCs and the BOP has not applied them to his term of supervised release.

## IV.     CONCLUSION

For the reasons stated above, the Court will deny Jells's motion to stay and dismiss his Section 2241 petition due to his failure to exhaust.  An appropriate Order follows.


                                                            s/ Yvette Kane
                                                            Yvette Kane, District Judge
                                                            United States District Court
                                                           Middle District of Pennsylvania